UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>FRANCISCO ALCARAZ,<br><br>　　　　　　　　　　　　Defendant. | Case No. 2:13-CR-189-KJD-CWH<br><br><br>ORDER |

Before the Court is Defendant Alcaraz's Motion to Suppress (#43), the Government opposed the motion (#51) and Defendant replied (#56). After an evidentiary hearing (#87), both Defendant and the Government provided supplemental briefing (##76, 77). The Magistrate then issued Findings and Recommendation (#82). Defendant objected to the Findings and Recommendation (#89) and the Government responded (#92). Also before the Court is the Government's Motion to Withdraw #91, Reply to Response to Motion (#93).

**I. Background**

The Court adopts the background as given by the Magistrate, in harmony with the below clarifications. At bottom, this motion concerns two separate incidents.

First, in November 2012, Las Vegas Metropolitan Police Department ("LVMPD") officers, including Officer Dewreede, responded to a report of a fight involving an individual with a firearm. The officers found fresh blood outside the door to an apartment and made contact with the female tenant. She consented to a search of the apartment. That search resulted in the

detaining of Defendant Alcaraz, his confession, and in finding the firearm at issue here.

Second, in February 2013, LVMPD officers conducted a records check on a vehicle, finding that the owner, Melissa Pratti, had an outstanding warrant for her arrest. The vehicle had subsequently stopped at a nearby gas station, and the officers pulled up behind Defendant without using either emergency lights or sirens. Defendant exited his vehicle and asked why he was being stopped. Ultimately, although there is some dispute regarding consent, the officers leaned into the vehicle to retrieve insurance documents. Upon doing so, a semi-automatic pistol was seen under the front passenger seat.

**II. Legal Standard for Findings and Recommendations**

The Court's obligation is "to arrive at its own independent conclusion about those portions of the magistrate's report to which objections are made." United States v. Remsing, 874 F.2d 614, 618 (9th Cir. 1989). Specifically, the Court is to engage in "de novo" review of the findings and recommendations objected to. 28 U.S.C. § 636(b)(1)(C) (2012). In doing so, the Court is afforded wide discretion as to the means of review, which may include a hearing, review of the transcript, etc. Remsing, 874 F.2d at 618. Here, the Court will review the transcript (#87) in this matter to provide de novo review.

**III. Analysis**

    **A. The Objections**

As a preliminary matter, Defendant makes some factual objections which he leaves wholly untethered to any legal theory.[1] This falls far short of Defendant's duty to provide substantive arguments to the Court, advocating for a particular application of the law to particular facts. "Judges are not like pigs, hunting for truffles buried in briefs." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991). Neither are the Courts an appropriate place to attempt

---

[1] As a practical matter, Defendant's approach is ineffective. Defendant could object to a host of factual findings, and Defendant could further be correct, but unless those facts are shown to be material to the recommendation of the Magistrate—unless those facts arguably alter the outcome under a particular legal theory—they are simply immaterial. Such objections should be avoided.

2

the "spaghetti approach," "heav[ing] the entire contents of a pot against the wall in hopes that something [will] stick." Indep. Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir. 2003). In sum, the Court cannot and will not act as Defendant's counsel, providing the legal theories which might make Defendant's factual objections meaningful. Accordingly, such "objections" will be noted for clarity's sake, but will not be addressed in any depth by the Court.

Defendant makes the following objections:

1. The Magistrate failed to note that during the consensual search of a dwelling, officers located a handgun in a previously locked closet *only after* being given a key by the tenant. #87 at 13-14. While Defendant is correct, Defendant fails to connect this minor fact, that the tenant provided the key to the locked closet, to any legal theory whatever. Accordingly, the Court will not consider this objection.

2. The Magistrate incorrectly found that Officer Dewreede detained Defendant while Defendant was in the kitchen. While Officer Dewreede testified that he did not recall detaining Defendant in the kitchen, Officer Dewreede did testify that he escorted Defendant from the apartment and remained with him. #87 at 14:18-21. Again, Defendant fails to connect this minor factual disparity to any legal theory. Accordingly, the Court will not consider this objection.

3. The Magistrate correctly found that Defendant spontaneously volunteered that he wanted a lawyer and did not want to talk about the incident, but incorrectly omitted Officer Dewreede's belief that this statement was directed to "any of the officers that were with him." #87 at 26:18-23. Again, Defendant fails to connect this objection with any legal theory whatever, and so it will not be addressed by the Court. However, to be clear, Detective Orth was not among those officers present at the time of this statement. (#87 at 26-27).

4. The Magistrate incorrectly concluded that Defendant testified that he made no statements except for requesting a lawyer. Defendant is incorrect, this is precisely the testimony

3

given by Defendant (#87 at 149:10-17). It is true that Officer Dewreede credibly testified that Defendant made statements to him regarding his life and the incident generally (#87 at 16:14-22). It is also true that this fact further undermines Defendant's credibility. However, Defendant's testimony is clear. Further, Defendant once again fails to connect this fact to any legal theory. Accordingly, for both of the above reasons, the Court will not address this objection.

5. The Magistrate incorrectly found that Detective Orth was credible despite failing to follow his usual practice of calling in or logging the time when a suspect is Mirandized. Defendant is incorrect. The transcript shows that Officer Dewreede testified that his practice is to call in or log the time when a suspect is Mirandized (#87 at 15:11-14). Detective Orth made no such statement, and it is Detective Orth who Mirandized Defendant (#87 at 42:10-12). While this objection approaches materiality, Defendant still fails to tether this fact to any legal theory. Most importantly, Defendant is simply incorrect. Accordingly, the Court will not address this objection further.

6. The Magistrate failed to infer that because Officer Dewreede did not testify that he saw Detective Orth use a printed card to Mirandize Defendant, Defendant must not have been Mirandized. First, Officer Dewreede was never asked whether he saw the card. Second, it would be wholly unsurprising to the Court that an officer who was nearby but uninvolved except for providing additional security (#87 at 29:6-20) would not have noticed such a card being used for the short duration required to Mirandize a suspect. Defendant's objection is frivolous. It is also unconnected to any legal theory. Accordingly, the Court will not address this objection further.

7. The Magistrate incorrectly stated that Defendant "possessed" the firearm. However, possession of the firearm is not directly before the Court at this juncture, making this objection of little, if any, relevance. Further, Defendant adopted the testimony of Detective Orth except that "[Detective Orth] left out a whole bunch of parts." #87 at

151:1-7. Detective Orth testified that Defendant admitted to finding the firearm in the parking lot and then hiding it in the closet, and that Defendant's DNA and fingerprints would be found on the firearm. #87 at 41:9-14. Accordingly, it fully appears on the basis of the record that Defendant did possess the firearm. Lastly, Defendant again fails to connect this fact to any legal theory. For all of these reasons, the Court will not address this objection further.

8. Defendant's confession was not voluntary, contrary to the Magistrate's finding. Defendant has tethered relevant facts to a relevant legal theory in this objection. Accordingly, it will be addressed below.

9. Because Defendant's confession was not voluntary, his DNA sample must be suppressed as fruit of the poisonous tree. This objection contains relevant facts tethered to a relevant legal theory and will be addressed below.

10. The Magistrate incorrectly concluded that Defendant lacks standing to suppress a voluntary statement from Heather Aguilera. This is a question of law the Court will review below.

11. The Magistrate omitted reference to Officer Corry's unsuccessful attempt to contact Melissa Pratti, Pratti's testimony that she had not received a call from Officer Corry, and that officers had previously successfully contacted Pratti. Defendant is correct that the above events occurred. However, these facts do not change the Court's analysis, nor alter the Magistrate's credibility determination. Further, Defendant's objection is unconnected to any legal theory. Accordingly, the Court will not address this objection further.

12. Officer Corry could not have seen the pistol under the vehicle's front seat in "plain view" as testified by Officer Corry and found by the Court. While no law or legal theory is presented, the Court will address this issue below as Defendant has invoked the term "plain view."

13. The Magistrate incorrectly found that the officers testified credibly when Officer Corry

first testified that he was unable to determine what caliber the firearm was by simply seeing the end of the barrel (#87 at 89:11-20), and then later testified that he believed he could tell the difference between a .45 caliber pistol and a 9mm, and that the pistol in the vehicle "appeared to be a 9mm" (#87 at 93:13-25) as it was smaller than the .45 the officer was carrying (#87 at 94:1-6). Defendant is incorrect; these two pieces of testimony are not contradictory. It would be very difficult to positively identify a semi-automatic pistol's caliber simply by seeing the end of the barrel. A host of popular semi-automatic pistols all approximate that size, including 9mm, 10mm, .357 SIG, .380 ACP, and the .40 S&W, among others. This inability to identify the caliber of the weapon in no way undermines Officer Corry's statement that the firearm "appeared to be a 9mm."

14. The Magistrate incorrectly noted Defendant's "contradictory" testimony regarding his passenger in the automobile as supporting the officer's credibility over Defendant's. Defendant is incorrect. This Court reads the transcript precisely as the Magistrate did. Defendant's testimony is wholly contradictory and, at least as to his passenger, wholly lacks credibility. Further, Defendant fails to connect this objection with any legal theory.[2] For all of these reasons, the Court will not address this objection further.

15. The Magistrate incorrectly omitted Defendant's statement that he told officer's to obtain a warrant to search his vehicle, and that Defendant never consented for the officers to open his glove box. Defendant is incorrect. While the Magistrate does omit reference to Defendant's testimony that the officers were instructed to obtain a warrant, this omission is irrelevant to the ultimate determination here. The Magistrate correctly found the officer's testimony to be substantially more credible than Defendants. The officers testified that Defendant gave his consent for the officers to open his glove box to review the vehicles registration (#87 at 88:4-13, 95:22-24, 104:9-22, 111:6-8, 130:1-10).

---

[2] To be clear, Defendant's underlying briefing repeatedly refers to Ms. Aguilera as Defendant's passenger.

6

Defendant consented to the search of the glove box. Further, Defendant once again fails to connect this minor omission to any legal theory. For all of the above reasons, the Court will not address this objection further.

**B. Analysis**

    **i. Voluntariness of Defendant's Confession**

The Court fully adopts and affirms the Magistrate's reasoning under Wauneka regarding the efficacy of the Miranda warnings. The same result is also reached under Missouri v. Seibert. 542 U.S. 600, 615 (2004). Under Seibert,

> "the court must address (1) the completeness and detail of the prewarning interrogation, (2) the overlapping content of the two rounds of interrogation, (3) the timing and circumstances of both interrogations, (4) the continuity of police personnel, (5) the extent to which the interrogator's questions treated the second round of interrogation as continuous with the first and (6) whether any curative measures were taken."

United States v. Williams, 435 F.3d 1148, 1160 (9th Cir. 2006).

To begin, the Court has reviewed the entire course of police conduct, and finds both confessions to be voluntary. See Oregon v. Elstad, 470 U.S. 298, 318 (1985). Turning to the first factor, Officer Dewreede credibly testified that he did not ask Defendant about the firearm, but that Defendant volunteered that information (#87 at 17-19). This factor indicates a voluntary statement in harmony with Miranda. Turning to the second factor, the scope of the interrogation is very narrow and short in duration, but within this small space there is some overlap. Accordingly, while this factor weighs against voluntariness, it does not count heavily in the Court's analysis. Turning to the third factor, the two interrogations occurred roughly within two hours of one another, substantially longer than in Seibert. However, the interrogations occurred in essentially the same circumstances. Accordingly, this factor weighs neither for nor against admissibility of the confession. Turning to the Fourth factor, Officer Dewreede conducted the first interrogation, while Detective Orth conducted the second. While it is true that Officer Dewreede was in the vicinity, Officer Dewreede credibly testified that he was far enough away to allow a private conversation (#87 at 29:9-20). Accordingly, the Court finds that this factor

weighs in favor of a voluntary confession in harmony with Miranda.

Turning to the Fifth factor, there is no credible indication that the second round of interrogation was treated as continuous with the first. To be clear, the only indication is from Defendant's testimony, which has already been determined as lacking credibility. "[Detective Orth] told me I wasn't – he was like, I already know what happened. . . . I just want to know your side of the story, like what happened. . . . [Detective Orth] already knew what had happened." (#87 at 154: 4-16). Even if Detective Orth made this statement, the Court finds that such a broad statement would fail to demonstrate either an intent to invoke the prior confession, or have the effect of invoking the prior confession. Accordingly, this factor weighs in favor of finding a voluntary confession in harmony with Miranda. Turning to the Sixth factor, no curative measures were taken. This factor weighs somewhat against finding a voluntary confession. Accordingly, on balance, the Court finds that the Miranda warnings were effective and that the second confession was voluntary.

### ii. DNA Evidence

Defendant makes no arguments, but merely disagrees with the Magistrate. Having reviewed this issue de novo, the Court hereby adopts and affirms the Magistrate's finding and recommendation in this regard.

### iii. Standing to Challenge Heather Aguilera's Statement

Defendant argues that the Magistrate incorrectly determined that Defendant lacked standing to challenge Heather Aguilera's statements. Specifically, Defendant argues that Crawford v. Washington requires the evidence to be suppressed because Defendant did not have the opportunity to confront and cross-examine Ms. Aguilera at the pretrial hearing. Defendant is incorrect. First, "[a]s the preliminary hearing itself is not constitutionally required, it follows that there are no constitutionally-required procedures governing the admissibility of hearsay at preliminary hearings." Peterson v. California, 604 F.3d 1166, 1169 (9th Cir. 2010). Second, the right to confrontation is "basically a trial right." Peterson, 604 F.3d at 1169 (quoting Barber v.

Page, 390 U.S. 719, 725 (1968)). Accordingly, a Defendant is "entitled to confront witnesses against him at trial . . . . [Defendants are] not constitutionally entitled to confront them at [a] preliminary hearing." Id. at 1169-70.

### iv. Plain View

To begin, Defendant's strained semantic arguments surrounding officers' use of the word "search" are wholly unpersuasive. Moving to the more substantive argument regarding plain view, Defendant is simply incorrect. The view illustrated in the attached exhibit is not that of an officer leaning into the vehicle, but that of an officer standing outside the vehicle (#87 at 76-77). Furthermore, the Court adopts and affirms the Magistrate's findings and recommendation in this regard. To be clear, Defendant has not offered any evidence or argument that would tend to overcome the Magistrate's finding that the officer was credible when he testified to leaning into the vehicle to retrieve insurance documents and seeing the tip of the pistol in plain view.

## IV. Conclusion

Good cause appearing, the Court **HEREBY GRANTS** the Government's Motion to Withdraw #91, Reply to Response to Motion (#93).

The Court further **ADOPTS** and **AFFIRMS** the Magistrate's Findings and Recommendation (#82) in harmony with the above discussion, **GRANTING** Defendant's Motion to Suppress (#43) only as to his statements to Officer Dewreede on November 17, 2012.

DATED this 12th day of August 2014.

Kent J. Dawson
United States District Judge