UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>FRANCISCO ALCARAZ,<br><br>　　　　　　　　　　Defendant. | Case No. 2:13-cr-00189-KJD-CWH<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Before the Court is Defendant's Motion for Compassionate Release under FIRST STEP Act (ECF #207). The United States responded in opposition (ECF #209) to which Defendant replied (ECF #212).

I.　　Factual and Procedural Background

Defendant Francisco Alcaraz ("Alcaraz") is serving a prison sentence after being convicted by a jury of three counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (ECF #164, at 1–2). The first two counts each carried a sentence of 120 months, to run concurrently. Id. The third count carried a 120-month sentence, with the first 60 months to run concurrently with the first two counts and the final 60 months to run consecutively, for a total of 180 months in custody. Id. Alcaraz's term of imprisonment will be followed by three years of supervised release. (ECF #207, at 3). His projected release date is on or around December 26, 2026. Id. Alcaraz requested compassionate release from the Bureau of Prisons ("BOP") in August 2020. Id. at 5. The BOP denied Alcaraz's request on November 5, 2020. (ECF #207-1, at 2–3). In the denial, the BOP recognized the risk of COVID-19 for inmates but found that it did not constitute extraordinary or compelling reasons justifying early release. Id. The BOP also found that Alcaraz's medical conditions of asthma, hypertension, and obesity could be managed and that, as a 36-year-old male, Alcaraz was healthy and required only simple,

chronic care. Id. at 2. The BOP then commended Alcaraz for his participation in programs while incarcerated but noted that participation did not constitute early release. Id. at 2–3. Now, Alcaraz asks the Court to grant his compassionate release because the COVID-19 pandemic constitutes an unprecedented health emergency, especially for Alcaraz as he is at higher risk for serious illness from COVID-19 due to his obesity, asthma, and hypertension. (ECF #207, at 9–12). Alcaraz adds that the Eighth Amendment requires his release because incarcerating him during the pandemic constitutes cruel and unusual punishment. (ECF #207, at 13–15). Alcaraz argues that the BOP's COVID-19 policies evidence its deliberate indifference toward Alcaraz's health. Id.

The government opposes Alcaraz's early release, arguing that he is a danger to the community and that Alcaraz's refusal of the COVID-19 vaccine weighs strongly against his argument that he fears for his safety. (ECF #209, at 5–10). The government relies on the circumstances underlying Alcaraz's conviction as evidence that he cannot show that he is not a danger to the community. Id. at 9–10. Alcaraz repeatedly possessed firearms in violent situations over the span of six months prior to his conviction. Id. at 10. These incidents include Alcaraz pointing a gun at another person during a fight in a parking lot and then hiding in a random woman's apartment while she was home; Alcaraz being arrested and found in possession of a firearm and methamphetamines; and Alcaraz being arrested after an altercation with another man in which Alcaraz fired a gun at the man's feet and threatened to shoot him if he disrespected Alcaraz. Id. at 2.

II.     Legal Standard

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). That statute provides, in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of

imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that […]extraordinary and compelling reasons warrant such a reduction […] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

If the defendant has exhausted administrative remedies, the analysis is twofold. First, the Court must consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. 18 U.S.C. § 3582(c)(1)(A). Second, the Court must find "extraordinary and compelling reasons" to release a defendant from BOP custody in a policy statement. Id.

### III.   Analysis

The Court must first consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a). Those factors include the nature and circumstances of the offense, the need for the sentence imposed, the kinds of sentences available and sentencing ranges established in the guidelines, pertinent policy statements, the need to avoid unwarranted sentence disparities, and the need to provide restitution. 18 U.S.C. § 3553(a). The Court considered these factors on the day of sentencing and finds that they warrant the sentence as it stands today. On the day of sentencing, the Court noted that it had a duty to protect the public from Alcaraz "in light of [his] criminal history and the offenses of conviction." (ECF #180, at 17). Alcaraz has not shown that he is no longer a danger to the community. The circumstances of his arrest were serious and put other individuals in danger. Wielding a firearm during a fight, threatening to shoot another person if they disrespect you, and firing shots at the feet of another show that Alcaraz's previous time incarcerated did not make him less of a danger to the community. The Court commends Alcaraz for completing programs while incarcerated and believes that it will aid him in his rehabilitation when the time comes. However, the need for a 180-month sentence existed at sentencing and the Court finds that it exists today. Because the need for the sentence imposed still exists and the nature and circumstances of Alcaraz's arrest

were serious, the Court finds that compassionate release is not warranted.

The Court also finds that "extraordinary and compelling reasons" do not exist to justify release. Alcaraz argues that his asthma, hypertension, and obesity place him at elevated risk of serious illness from COVID-19 and that the BOP has failed to protect inmates from infection. While COVID-19 is difficult to stop anywhere, the Court recognizes that the BOP has made adjustments and efforts to protect inmates from infection and serious illness. These measures include suspending visitation but adding phone time, limiting movement to prevent congregations, performing COVID-19 screenings for all new intakes, and suspending staff training and travel. BOP MODIFIED OPERATIONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited April. 4, 2022). Additionally, the BOP has emphasized home confinement, even without judicial interference, for those at high risk and "significantly increased its placement of offenders on home confinement." FREQUENTLY ASKED QUESTIONS REGARDING POTENTIAL INMATE HOME CONFINEMENT IN RESPONSE TO THE COVID-19 PANDEMIC, https://www.bop.gov/coronavirus/faq.jsp#:~:text=Since%20the%20release%20of%20the,of%20offenders%20on%20home%20confinement (last visited April 4, 2022). The BOP has placed over 40,000 inmates on home confinement during the pandemic. Id. Finally, the BOP has been vaccinating both staff and inmates and has administered over 342,000 doses of the vaccine. COVID-19 CORONAVIRUS, https://www.bop.gov/coronavirus/ (last visited April 4, 2022). The BOP has taken measures to prevent inmates from serious illness and its policies do not constitute an extraordinary or compelling reason to justify compassionate release.

Additionally, FTC Oklahoma, where Alcaraz resides, is not currently experiencing a bad COVID-19 outbreak. According to the BOP, there are no positive cases in the facility and 722 inmates have fully recovered from COVID-19 while only two have died. Id. Over 200 staff members and 934 inmates (out of 1,076) have been fully inoculated. Id.; see also FTC OKLAHOMA CITY, https://www.bop.gov/locations/institutions/okl/ (last visited April 4, 2022) (indicating the total number of inmates housed at the facility). While the BOP has made great efforts to prevent the spread of COVID-19, Alcaraz has refused the vaccination. The Court considers this fact and finds that it weighs against compassionate release. See United States v.

McCain-Bray, No. 2:16-cr-00224-KJD-CWH, 2021 WL 5501103, at *1–2 (D. Nev. Nov. 23, 2021) (listing cases that have found that refusing vaccination weighs against compassionate release). Because Alcaraz cannot show extraordinary or compelling reasons that justify compassionate release, the Court denies his motion.

Alcaraz's argument that his incarceration during a pandemic is an Eighth Amendment violation "is not properly raised in his compassionate release [m]otion." United States v. Iglesias, No. 04-00467, 2021 WL 183306, at *3 (E.D. Penn. Jan. 19, 2021). The Iglesias court lists other courts that have come to the same conclusion. Id. (listing cases). Because the argument is not properly raised in a motion for compassionate release, the Court will not rule on it. However, with the measures the BOP has taken the Court considers it unlikely that the BOP was deliberately indifferent to Alcaraz's medical needs, especially since Alcaraz has tested positive for COVID-19 and suffered only a sore throat and nasal congestion.

Accordingly, because Anderson cannot show that extraordinary and compelling reasons exist to justify his release, his motion is denied.

IV.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Compassionate Release (ECF #207) is **DENIED**.

IT IS FURTHER ORDERED that the government's Motion to Seal Response to Motion Exhibit A (ECF #210) is **GRANTED**.

Dated this 4th day of April, 2022.

_____
Kent J. Dawson
United States District Judge